UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY M. SULLIVAN,

    Plaintiff,                                          Civil Action No. 08-11713

v.                                                HON. PAUL D. BORMAN
                                                      U.S. District Judge
                                                      HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

       Plaintiff Jeffrey M. Sullivan brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent the case is remanded to the administrative level for further proceedings consistent with Section **A.** of the analysis.

## **PROCEDURAL HISTORY**

       On March 2, 2005, Plaintiff filed an application for DIB, alleging disability as of

December 28, 2003[1] (Tr. 12, 56).  After the initial denial of his claim, Plaintiff filed a timely request for an administrative hearing, conducted on October 11, 2007 in Flint, Michigan before Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 232).  Plaintiff, represented by attorney Joseph Houle, testified, as did Vocational Expert ("VE") Pauline McEachin (Tr. 235-244, 244-249).  On November 6, 2007, ALJ Sobrino found that although Plaintiff was unable to perform any of his past work, he retained the capacity to perform a significant range of sedentary jobs (Tr. 17-18).  On February 28, 2008, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on April 22, 2008.

## BACKGROUND FACTS

Plaintiff, born February 14, 1959, was 49 when the ALJ issued her decision (Tr. 17). He completed high school and worked previously as a machine operator and cemetery tender (Tr. 60, 64).  He alleges disability as a result of back injuries sustained in a December, 2003 snowmobile accident (Tr. 59).

### A.     Plaintiff's Testimony

Plaintiff testified that he lived alone in a mobile home (Tr. 235).   He reported that since his December, 2003 injury, he had made one unsuccessful work attempt (Tr. 236). Plaintiff alleged that both pain and medication side effects prevented him from working, adding that he was unable to walk or stand for more than ten minutes at a time (Tr. 236-237).

---

[1] Because the transcript does not contain Plaintiff's March 2, 2005 application for benefits, the Court relies on the administrative decision for a number of background facts.

Plaintiff, noting that he used a cane most of the time, also testified that he was unable to sit in one position for more than 15 minutes (Tr. 237).  He reported that he was unable to lift more than five pounds, adding that he experienced difficulty with fine manipulations, reaching overhead, bending, crouching, and climbing stairs (Tr. 238). Plaintiff denied performing household chores or participating in organized activities, but reported that he visited his parents occasionally and could drive short distances (Tr. 239).  He testified that he was unable to walk his small dog, noting instead that he allowed the dog to run in an enclosed space (Tr. 239).  Plaintiff reported that he was independent but slow in performing self-care tasks (Tr. 240).  He alleged medication side effects of muscle weakness and vertigo (Tr. 240).

Plaintiff testified that he underwent spinal fusion surgery following his December, 2003 accident, reporting only minimal improvement from subsequent physical therapy (Tr. 241).  He denied receiving mental health treatment[2] (Tr. 242).  In response to questioning by his attorney, Plaintiff reiterated that he experienced difficulty "taking care of his . . . basic needs" such as meal preparation, grocery shopping, and grooming (Tr. 242).  Plaintiff testified that he spent almost half his waking hours reclining, adding that he slept fitfully, waking up multiple times each night (Tr. 243-244).

### B. Medical Evidence

---

[2] However, Plaintiff's treating records indicate that he was prescribed antidepressants on several occasions.

### 1. Treating Sources

In December, 2003, Plaintiff sought emergency treatment after injuring his back in a snowmobile accident (Tr. 169, 190-196). The following day, he underwent surgery to repair a compression burst fracture at T-12 (Tr. 170-171). January, February, and May, 2004 imaging studies of the thoracic and lumbar spine show that Plaintiff's condition remained stable following the fusion surgery (Tr. 174-177, 188-189, 201-202). February, 2004 physical therapy notes state that Plaintiff continued to experience significant pain with a limited range of motion (Tr. 206). The following month, physical therapy discharge notes indicate that Plaintiff had not shown "significant progress" (Tr. 210). Physical Therapist Jennifer K. Root opined that Plaintiff was "not. . . well motivated to improve his functioning and has not shown a willingness to try and go without his cane or to try improving his exercise program" (Tr. 210). December, 2004 imaging studies of the thoracic and lumbar spine showed a "[s]table spine with no acute abnormalities" (Tr. 164, 166, 185-186). The same month, Alexander Iwanow, M.D. remarked that although Plaintiff's fusion surgery was well healed, he "was not sure why the patient's pain [was] continuing" (Tr 157).

In January, 2005, Dr. Iwanow opined that he "doubt[ed] whether [Plaintiff] will ever be able to return back to any sort of employment" (Tr. 156). Dr. Iwanow, prescribing Neurontin, also recommended the use of epidural nerve blocks (Tr. 156). The same month, physical therapy discharge notes showed a modest improvement in Plaintiff's condition (Tr. 159, 223). In February, 2005, Dr. Iwanow again found that Plaintiff "ha[d] too much pathology . . . to allow him to return to any kind of gainful employment" (Tr. 153). The same

-4-

month, Plaintiff noted that Wellbutrin did not improve symptoms of depression (Tr. 130).

In April, 2005, an associate of Dr. Iwanow, H. Churbaji, M.D., completed a medical source statement, finding that Plaintiff could lift less than ten pounds, stand or walk for less than two hours in an eight-hour workday, and needed to alternate between sitting and standing (Tr. 146-147). Dr. Churbaji found further that Plaintiff was precluded from all climbing and crawling and limited to occasional balancing, kneeling, and crouching (Tr. 147). The following month, Dr. Iwanow, remarking that Plaintiff had "a very bad back in regard to his x-ray findings," was "totally and permanently disabled" (Tr. 131). Plaintiff expressed interest in undergoing another course of rehabilitation (Tr. 127). In June, 2005, Plaintiff, reporting that Zoloft did not improve symptoms of depression, was prescribed Effexor (Tr. 126).

In March, 2006, Plaintiff reported using Vicodin four times a day as needed (Tr. 120). Plaintiff, noting that physical therapy had been unhelpful, expressed interest in massage therapy and acupuncture (Tr. 120). Nicholas Jardas, P.A, prescribed Prozac, remarking that Wellbutrin, Effexor, and Zoloft had all been ineffective in treating Plaintiff's depression (Tr. 120). The following month, Plaintiff reported "some improvement" after taking Prozac (Tr. 119). May, 2006 treating notes showed that Plaintiff was "[s]table with Prozac," but the following month, Plaintiff discontinued the antidepressant after experiencing "fatigue and increased sleepiness" (Tr. 118). In July, 2006, Plaintiff's depression was deemed "stable without medications" (Tr. 116).

In November, 2006, imaging studies showed Grade 1 spondylolisthesis of L5 and S1

as well as a compression deformity at T-12 (Tr. 112). Michael P. Bartlett, M.D. noted that both conditions were stable (Tr. 112). April, 2007 treatment notes indicate that symptoms of depression remained stable (Tr. 105). Undated treatment notes by Tarek Ezzeddine, M.D. show that Plaintiff took MS Contin for ongoing back pain (Tr. 226-229).

### 2. Consultive and Non-examining Sources

In April, 2005, Larry G. Thomson, M.D., reviewing Plaintiff's treating records, observed the absence of neurological deficits, but noted that Plaintiff reported "ongoing pain" and a "slightly broadened" gait (Tr. 141). Dr. Thomas remarked that Plaintiff used Vicodin and Skelaxin on an occasional basis (Tr. 141).

The same month, Dr. Thomson performed a Residual Functional Capacity Assessment (Tr. 133-140). Dr. Thompson found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for at least two hours in an eight-hour work period; sit for about six hours; and push and pull without limitation (Tr. 134). The Assessment limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 135-137).

### C.    Vocational Expert Testimony

VE Pauline McEachin classified Plaintiff's former work as a cemetery groundskeeper

and machine operator as unskilled at the medium level of exertion[3] (Tr. 103). ALJ Sobrino posed the following question to the VE:

> "Please assume . . . someone who's done [Plaintiff's former jobs] and assume a person who has a twelfth grade education who was born in 1959. I want you to assume a person who cannot lift, carry, push or pull more than 10 pounds frequently. No more than 20 pounds occasionally. The person is limited to standing and walking two hours in an eight hour work day, can sit for up to eight hours in an eight hour work day. The person should be able to alternate sitting and standing when they want to. The person should not climb ladders, ropes or scaffolds. Can occasionally climb stairs, occasionally balance, can only rarely stoop. Rarely is not never, but it is less than a third of a work day. The person should [not] have to crouch, crawl or kneel. There should be no exposure to fumes, dust, or gases. There should be no driving as a work duty. Assume a person who is limited to doing work that is simple, routine and repetitive. A person with these limitations could not do the work Mr. Sullivan did is that right?"

(Tr. 245-246). The VE concurred that given the above limitations, the hypothetical individual could not perform Plaintiff's past work (Tr. 246). However, the VE stated that the individual could perform the sedentary, unskilled work of a surveillance system monitor (2,000 jobs in the regional economy), inspector (5,000), and sorter (4,000)(Tr. 246-247). The VE testified that the use of a cane or back brace would not preclude the individual from performing any of the three positions (Tr. 247). The VE concluded her findings by stating

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 247).

### D.     The ALJ's Decision

Citing Plaintiff's medical records, ALJ Sobrino found that Plaintiff experienced the severe impairments of degenerative joint and disc disease, chronic obstructive pulmonary disease ("COPD"), and depression (Tr. 14). Nonetheless, she determined that although Plaintiff had a severe impairment or combination of impairments, none met or equaled any impairment listed in 20 C.R.F. Part 404, Subpart P, Appendix 1 (Tr. 15).

She found that while Plaintiff was unable to perform any of his past relevant work, he retained the residual functional capacity ("RFC"):

> "To lift, carry, push and pull 10 pounds. He is able to stand/walk 2 hours per 8-hour workday and sit up to 8 hours per 8-hour workday, provided he has the opportunity to alternate sitting and standing at will. He should not climb ladders, ropes, or scaffolds. He can occasionally climb stairs and balance. He can rarely stoop. He should not kneel, crouch or crawl. He should not be exposed to hazards or vibration. He should not be required to operate foot or leg controls, or drive as work duty. He should not be exposed to concentrated fumes, dusts, or gases. He should be able to use a cane to walk. He should be able to wear a back brace while working. The claimant is able to perform simple, routine, repetitive work."

(Tr. 15).

Adopting the VE's job findings, the ALJ found that while Plaintiff was unable to perform his former jobs, he could work as a video surveillance monitor, inspector, and sorter (Tr. 17). Acknowledging "medical evidence document[ing] the existence of impairments that can reasonably be expected to produce symptoms such as pain and depression," the ALJ

nonetheless found that Plaintiff's allegations of limitation were "not fully substantiated (Tr. 16). In support of her credibility determination, she cited numerous imaging studies showing stable results in the months following the December, 2003 fusion surgery, noting the absence of subsequent hospitalizations (Tr. 16).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes multiple arguments for reversal of the administrative decision, contending first that the ALJ failed to explain her reasons for rejecting Drs. Iwanow's and Churbaji's disability opinions. *Plaintiff's Brief* at 9-11, *Docket #8* (*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541 (6th Cir. 2004)). Next, citing *Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004), he argues that the ALJ compounded the above error by failing to consider the treating physicians' opinions when composing the hypothetical question, thus invalidating the VE's finding that Plaintiff could

-10-

perform sedentary work. *Plaintiff's Brief,* at 11-12. On a related note, Plaintiff argues that contrary to the requirements of SSR 00-4p, the ALJ failed to resolve conflicts between the VE's testimony and the information found in the DOT. *Plaintiff's Brief* at 13-14. Finally, Plaintiff argues that the ALJ failed to explain her reasons for discounting his allegations of limitation. *Plaintiff's Brief* at 12-13 (*citing* SSR 96-7p).

### A. The Treating Physicians' Opinions

The transcript shows that between January and May, 2005, Dr. Iwanow stated repeatedly and unambiguously that Plaintiff was disabled (Tr. 131, 153,156). Moreover, in April, 2005, Dr. Churbaji completed a medical source statement, deeming Plaintiff unable to perform even sedentary work (Tr. 146-148). While the ultimate legal conclusion as to whether a plaintiff is disabled or unable to work is reserved to the Commissioner pursuant to SSR 96-8p, fn.8; 20 C.F.R. §404.1527(e)(1), the ALJ's treating physician analysis contains both procedural and substantive deficiencies requiring remand.

As a general principle, the uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). Here, the ALJ permissibly noted that an April, 2005 Residual Functional Capacity Assessment performed on behalf of the SSA stood at odds with Drs. Iwanow and Churbaji's disability opinions (Tr. 16 *citing* 133-140*).* However, in the presence of contradictory evidence allowing the ALJ to accord less than controlling weight to the treating source opinion, she was nonetheless consider the *all* of the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent

of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson,* 378 F.3d 541, 544 (*citing* 20 C.F.R. § 404.1527(d)(2)). The record shows that she did not.

First, the ALJ's references to the treating physicians makes no mention of the length or frequency of examination although in fact, Plaintiff's medical records show that he began treatment with Dr. Iwanow at least as early as December, 2004 and saw him on a monthly basis. (Tr. 157). Likewise, the administrative opinion does not acknowledge Dr. Iwanow's specialty (physical medicine). While the ALJ references Dr. Iwanow's May, 2005 statement, she fails to note that the treating physician had already opined in both January and February, 2005 that Plaintiff was disabled (Tr. 153, 156).

Further, the ALJ does not state whether the physicians' opinions were rejected in part or whole. While her rejection of Dr. Churbaji's three-page assessment can obviously be inferred from the non-disability finding, the ALJ's failure to state which part of the opinion was rejected and why are critical errors:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)). Even assuming that substantial evidence found elsewhere in record would support her determination, the failure to discuss the relevant factors set forth in C.F.R. § 404.1527(d)(2) requires a remand for clarification.

### B. The VE's Testimony

### 1. The Hypothetical Question

Plaintiff also argues that the ALJ's failure to adopt the treating physicians' opinions in crafting her hypothetical question invalidates the VE's testimony that he was capable of sedentary work. *See Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments.")(internal citations omitted); *See also Webb, supra,* 368 F.3d at 632. Nonetheless here, substantial evidence support the ALJ's hypothetical question. Although Plaintiff argues that the VE's findings are tainted by the ALJ's failure to consider the Drs. Iwanow and Churbaji's opinions, the hypothetical limitations reflect an otherwise fair reading of the record. December, 2004 imaging studies show that one year after the fusion surgery that Plaintiff's spine was "stable," supporting the ALJ's conclusion that he could perform at least sedentary work (Tr. 164, 166). Physical therapy notes suggest that Plaintiff was unwilling, rather than unable to work (Tr. 210). Moreover, the ALJ included significantly greater limitations in the hypothetical question than in the April, 2005 Residual Functional Capacity Assessment by precluding all climbing of ropes, ladders, and scaffolds as well as crouching, crawling, and kneeling (*compare* Tr. 135, 245-246). As discussed in Section **A.,** *supra,* the ALJ, upon remand, may well adopt the treating physicians' disability opinions or alternatively, impose additional hypothetical restrictions. However, independent of the errors found in the treating

physician discussion, her present hypothetical limitations are well supported by record evidence.

### 2. SSR 00-4p

Next, Plaintiff, noting that the DOT "is silent on the issue of the "sit-stand option," (a limitation included in the hypothetical question) argues that "the ALJ's failure to account for the discrepancy violates SSR 00-4p." *Plaintiff's Brief* at 13-14.

SSR 00-4p states in pertinent part:

"When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."

Plaintiff's argument is without merit. First, the ALJ asked the VE explicitly whether her testimony was consistent with information in the DOT to which the VE replied "yes" (Tr. 247). Obviously, the ALJ was not required to "obtain a reasonable explanation" for a non-existent conflict (Tr. 247). Nonetheless, Plaintiff erroneously concludes that because the DOT is silent on the issue of a sit/stand options, the VE's testimony that Plaintiff could perform the work of a surveillance monitor, inspector, and sorter with a sit/stand option is "in conflict" with the DOT. Although he relies on *Young v. Commissioner of Social Security,* 351 F.Supp.2d 644 (E.D. 2004)(Lawson, J.), for this proposition, *Young* does not

place an affirmative duty on the ALJ to reconcile the VE's testimony with the DOT in the absence of a conflict. "*If* the ALJ would have perceived a conflict between the vocational expert's opinion and the job requirements for reasoning and reading listed in the *DOT,* then the ALJ was obliged to elicit information to resolve the conflict." *Id.* (emphasis added). Even assuming that the ALJ was remiss in not questioning the VE more aggressively on the source of her findings, Plaintiff has failed to identify even one example of how VE's testimony "conflicted" with DOT.  While the ALJ did not ask the VE the source of her findings that the above jobs could be performed with a sit/stand option, Plaintiff's offers no support for his conclusion that the VE's testimony was unsupported by substantial evidence. Significantly, although Plaintiff's current attorney was also present at the administrative hearing, he declined the ALJ's offer to question the VE (Tr. 248).

### C. Credibility

In addition, Plaintiff argues briefly that the ALJ's credibility determination is procedurally and substantively deficient.  *Plaintiff's Brief* at 12-13.  Citing *Rogers v. Commissioner of Social Security,* 486 F. 3d 236, 248 (6th Cir, 2007), he contends that the ALJ neglected to provide specific reasons for discounting his allegations of disability.  He also argues that "the ALJ failed to make a finding regarding the weight she gave Plaintiff's credibility"  (Tr. 16-17).

The credibility determination, guided by SSR 96-7p,  describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an

underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986)(*citing* SSR 96-7p). Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." While courts generally cede enormous latitude to the administrative credibility determinations, *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993), an ALJ's decision must contain specific reasons for the findings of credibility, supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *see also Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ's credibility findings are both procedurally and substantively adequate. Contrary to Plaintiff's claim that the administrative decision omitted a finding of whether his allegations were discounted, the ALJ stated as follows:

> "The medical evidence documents the existence of impairments that can reasonably be expected to produce symptoms such as pain and depression. However, allegations of disabling symptoms are not fully substantiated."

(Tr. 16). Pursuant to SSR 96-7p, the ALJ also provided adequate reasons for the determination, noting that Plaintiff's allegations of disability stood at odds with imaging studies showing that the spinal fusion was stable (Tr. 16). She observed that Plaintiff had not

been readmitted to the hospital since 2003 and that although he reported the medication side effect of drowsiness, he continued to drive on a regular basis (Tr. 16).  Because the credibility determination is well supported by substantial evidence, it should remain undisturbed.  *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'").

In closing, I note that while pursuant to *Wilson, supra*, deficiencies in the treating physician analysis constitute reversible error, this does not suggest that Plaintiff is automatically entitled to benefits.   In reviewing and discussing the records of Plaintiff's treating sources, the ALJ may well finding that substantial evidence again supports a finding that Plaintiff is not disabled.  Accordingly, the case should be remanded for further proceedings rather than benefits, consistent with Sections **A.** of the analysis.  *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent the case is remanded to the administrative level for further proceedings consistent with Section **A.** of the analysis.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich.

LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated:  April 22, 2009

CERTIFICATE OF SERVICE

-18-

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 22, 2009.


                              s/Susan Jefferson

                              Case Manager